1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11  JOHN PAIKAI,
    On Behalf Of Himself And
12  All Others Similarly Situated,
                                        NO. CIV. S-07-892 FCD GGH
13           Plaintiffs,

14       v.                             <u>MEMORANDUM AND ORDER</u>

15  GENERAL MOTORS CORPORATION,

16           Defendant.
    _____/
17
    DAVID B. SIDNER,
18  On Behalf Of himself And
    All Others Similarly Situated,
19
             Plaintiffs,
20
         v.
21
    GENERAL MOTORS CORPORATION,
22
             Defendant.
23  _____/

24

25

26

27

28

                              1

----oo0oo----

1

2       This matter is before the court on General Motors

3  Corporation's ("defendant" or "GM") motions to dismiss[1] John

4  Paikai's ("Florida plaintiff" or "Paikai") second amended

5  complaint and David B. Sidner's ("Ohio plaintiff" or "Sidner")

6  complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

7  Defendant asserts that both complaints fail to state a claim upon

8  which relief can be granted under the relevant State's laws.

9  Specifically, defendant contends that there is no claim of unjust

10  enrichment under Florida or Ohio law when a valid contract

11  governs the transaction (Fla. Def.'s Mem. of P. & A., filed Sept.

12  22, 2008 ("Fla. MTD"), at 1; Ohio Def.'s Mem. of P. & A., filed

13  Oct. 23, 2008 ("Ohio MTD"), at 1.), and that Ohio plaintiff's

14  unjust enrichment claim also fails because Sidner did not

15  adequately plead that he conferred a benefit on defendant.  (Ohio

16  MTD at 1.)  Defendant further contends that Paikai and Sidner

17

18       [1]    This order addresses defendant's motion to dismiss the
19  second (Paikai v. General Motors Corp., Case No. Civ. 07-02469
    FCD/GGH) and third (Sidner v. General Motors Corp., Case No. Civ.
20  08-2172 FCD/GGH) of three consumer class actions currently
    pending before the undersigned, alleging statutory and common law
21  violations in connection with the manufacture, marketing, and
    sale of Pontiac GTOS.  The first action, O'Connor v. General
22  Motors Corp., case No. Civ. 07-892 FCD/GGH, was filed on May 10,
    2007, on behalf of a class of California consumers.  The parties'
23  stipulated motion for consolidation of the first two actions
    (O'Connor and Paikai) was granted by this court on May 19, 2008.
24  The third related case, Sidner, was filed on September 15, 2008.
    GM filed a motion to consolidate the Sidner action with the
25  O'Connor and Paikai actions on October 1, 2008.  The motion was
    granted on October 23, 2008.
26          Due to the overlapping factual allegations and
    substantial similarity in the substantive law, the court
27  addresses both motions to dismiss in one order.

28       [2]    All further references to a "Rule" are to the Federal
    Rules of Civil Procedure.

failed to state claims under the Florida Deceptive and Unfair

Trade Practices Act ("Florida DUTPA" or "FDUTPA") and the Ohio

Consumer Sales Practices Act ("Ohio CSPA" or "OCSPA")

respectively, or, alternatively, that plaintiffs failed to meet

the heightened pleading requirements of Rule 9(b) for these

claims.  (Fla. MTD at 1-2; Ohio MTD at 1-2.)  Lastly, defendant

asserts that plaintiffs' class claims fail because the elements

of the various claims make them "unsuitable for class treatment."

(Fla. MTD at 2; Ohio MTD at 2.)  Plaintiffs oppose the motions

or, in the alternative, seek leave to amend their complaints.

     For the reasons set forth below, defendant's motions to

dismiss are GRANTED in part and DENIED in part.  Plaintiff is

granted leave to amend on the grounds set forth below.[3]

BACKGROUND

     Plaintiffs claims arise from the following alleged facts:

### 1. **Facts Pertaining to Both Plaintiffs**

     The tires on 2004, 2005, and 2006 Pontiac GTOs are "prone to

failure because the suspension system and alignment settings (and

specifically the camber settings) are improperly designed,

assembled, and/or installed, causing, inter alia, uneven and

premature tire wear and failure, as well as causing the inside

front tires to graze the struts during normal operation and use."

(Fla. Pl.'s Second Am. Compl., filed Aug. 14, 2008 ("Fla.

Compl."), ¶ 2; Ohio Pl.'s Compl., filed Oct. 23, 2008 ("Ohio

Compl."), ¶ 2.)  The subject GTOs were built by defendant GM on

---

[3]     Because oral argument will not be of material
assistance, the court orders these matters submitted on the
briefs.  E.D. Cal. L.R. 78-230(h).

the same platform as Australia's Holden Monaro ("Monaro"), which is manufactured by the GM subsidiary GM Holden Limited. (Fla. Compl. ¶ 3; Ohio Compl. ¶ 3.) The Monaros were equipped with 235 mm wide tires mounted on 17" wheels. (Fla. Compl. ¶ 3; Ohio Compl. ¶ 3.) However, the vehicles at issue were equipped with 245 mm wide tires mounted on 17" wheels when sold as GTOs within the United States. (Fla. Compl. ¶ 3; Ohio Compl. ¶ 3.)

Defendant provided plaintiffs and each owner and lessee of the subject vehicles with a 3 year, 36,000 mile bumper-to-bumper factory warranty. (Fla. Compl. ¶ 20; Ohio Compl. ¶20.) The warranty, in relevant part, states:

> The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period.
>                    . . .
> Warranty repairs, including towing, parts, and labor, will be made at no charge.
>                    . . .
> The tires supplied with your vehicle are covered against defects in material or workmanship under the Bumpter-to-Bumper coverage. Any tire replaced will continue to be warranted for the remaining portion of the Bumper-to-Bumper coverage period.

(Fla. Compl. ¶ 20; Ohio Compl. ¶ 20.) In addition to the warranty, defendant made the following assertions in its GTO owner's manual:

> The wheels on your vehicle were aligned and balanced carefully at the factory to give you the longest tire life and best overall performance. Scheduled wheel alignment and wheel balancing are not needed.

(Fla. Compl. ¶ 21; Ohio Compl. ¶ 21.)

Plaintiffs allege that defendant, through its "marketing and sales campaign," and in its "sales and marketing materials, warranties, and through its sales representatives" concealed, failed to disclose, and misrepresented material information

4

1  regarding the vehicles.  (Fla. Compl. ¶ 22; Ohio Compl. ¶22.)

2  Specifically, plaintiffs allege that defendant omitted and

3  misrepresented information relating to defects in "the suspension

4  system and alignment setting," that such defects would cause

5  premature tire wear, and that defendant would not repair or

6  provide full reimbursement for damages caused by the defects.

7  (Fla. Compl. ¶ 22; Ohio Compl. ¶ 22.)  According to plaintiffs,

8  defendant was on notice and "had exclusive knowledge of the

9  defects and reduced useful life of the tires that resulted."

10  (Fla. Compl. ¶¶ 24-25; Ohio Compl. ¶¶ 24-25.)  Had plaintiffs

11  known of these defects, they "would not have purchased, or would

12  have paid substantially less for, their Vehicles."  (Fla. Compl.

13  ¶ 23; Ohio Compl. ¶ 23.)  For these reasons, plaintiffs maintain

14  that "the limited warranties accompanying the Vehicles are

15  unconscionable."  (Fla. Compl. ¶ 26; Ohio Compl. ¶ 26.)

16      **2. <u>Facts Pertaining to Florida Plaintiff</u>**

17      On September 20, 2005, Paikai purchased a 2005 Pontiac GTO

18  from Allen J. Pontiac ("Allen"), an authorized GM dealership in

19  Florida, through a written sales contract.  (Fla. Compl. ¶¶ 7,

20  27.)  Paikai's GTO came with standard 17" wheels and BF Goodrich

21  tires.  (<u>Id.</u>)  On April 20, 2006, plaintiff took his GTO to

22  Yarbrough Tire ("Yarbrough") in Lake Placid, Florida in response

23  to finding his tires significantly worn after 12,003 miles.  (<u>Id.</u>

24  ¶ 30.)  Yarbrough determined that the tires needed replacement.

25  (<u>Id.</u>)  Paikai paid Yarbrough $1895.14 for four new wheels and

26  tires.  (<u>Id.</u>)

27      Paikai took his GTO to Allen in October 2007 because he

28  thought it was pulling to the right.  (<u>Id.</u> ¶ 34.)  Allen

5

realigned the vehicle, explaining that the alignment, specifically the camber, was out of specification. (Id.) Later, on December 17, 2007, plaintiff returned to Yarbrough to purchase four new tires due to inner shoulder wear, despite having used the tires for only 20,369 miles and rotating them according to schedule. (Id. ¶ 35.) The tires cost $568.13. (Id.)

Paikai filed the instant action on November 15, 2007 on behalf of himself and all others similarly situated. Plaintiff asserts class action claims for: (1) violations of the Florida DUTPA, Fla. Stat. section 501.201 et seq.; (2) breach of warranty; and (3) unjust enrichment. Plaintiff filed a first amended complaint on April 3, 2008 and a second amended complaint on August 14, 2008, modifying certain factual allegations but asserting the same causes of action against defendant. Defendant now moves to dismiss Paikai's second amended complaint for failure to state a claim upon which relief can be granted.

### 3. Facts Pertaining to Ohio Plaintiff

On April 4, 2006, Sidner purchased a new 2006 GTO from H & K Motor Sales, Inc., ("H & K"), an authorized GM dealership in Ohio. (Ohio Compl. ¶ 27.) He purchased the vehicle pursuant to a written contract for $29,200.00. (Id.) In early January 2008, Sidner telephoned Haydocy Pontiac GMC Buick ("Haydocy"), an authorized Pontiac dealer, to explain that he had tire damage. (Id. ¶ 31.) Upon the dealership's assertion that the tire wear was not covered under the warranty, Sidner called defendant's customer service to complain. (Id. ¶¶ 31-32.) He was directed to take the car back to Haydocy, where the service writer reaffirmed that the tire would not be covered by the warranty.

6

1  (Id. ¶ 32.)  Sidner subsequently took the vehicle to a Firestone

2  in Columbus, Ohio and paid $304.00 for a replacement tire.  (Id.

3  ¶ 33.)

4      Sidner filed the instant action on September 15, 2008 on

5  behalf of himself and all others similarly situated.  Plaintiff

6  asserted class action claims for:  1) violations of the Ohio

7  CSPA, Ohio Rev. Code section 1345.01 et seq.; 2) violation of the

8  Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. section 2301 3)

9  breach of warranty, Ohio Rev. Code section 1302.26, and 4) unjust

10 enrichment.  Defendant now moves to dismiss Sidner's complaint

11 for failure to state a claim upon which relief can be granted.

12                          **STANDARD**

13     On a motion to dismiss, the allegations of the complaint

14 must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322

15 (1972).  The court is bound to give plaintiff the benefit of

16 every reasonable inference to be drawn from the "well-pleaded"

17 allegations of the complaint.  Retail Clerks Int'l Ass'n v.

18 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

19 need not necessarily plead a particular fact if that fact is a

20 reasonable inference from facts properly alleged.  See id.

21     Nevertheless, it is inappropriate to assume that the

22 plaintiff "can prove facts which it has not alleged or that the

23 defendants have violated the . . . laws in ways that have not

24 been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal.

25 State Council of Carpenters, 459 U.S. 519, 526 (1983).  Moreover,

26 the court "need not assume the truth of legal conclusions cast in

27 the form of factual allegations."  U.S. ex rel. Chunie v.

28 Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

1    Ultimately, the court may not dismiss a complaint in which
2    the plaintiff has alleged "enough facts to state a claim to
3    relief that is plausible on its face." <u>Bell Atlantic Corp. v.</u>
4    <u>Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  Only where a plaintiff
5    has not "nudged [his or her] claims across the line from
6    conceivable to plausible," is the complaint properly dismissed.
7    <u>Id.</u>  "[A] court may dismiss a complaint only if it is clear that
8    no relief could be granted under any set of facts that could be
9    proved consistent with the allegations." <u>Swierkiewicz v. Sorema</u>
10   <u>N.A.</u>, 534 U.S. 506, 514 (2002) (quoting <u>Hudson v. King &</u>
11   <u>Spalding</u>, 467 U.S. 69, 73 (1984)).

12       In ruling upon a motion to dismiss, the court may consider
13   only the complaint, any exhibits thereto, and matters which may
14   be judicially noticed pursuant to Federal Rule of Evidence 201.
15   <u>See</u> <u>Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir.
16   1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States,</u>
17   <u>Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

18                           **ANALYSIS**

19       This case was brought pursuant to federal diversity
20   jurisdiction.  (Fla. Compl. ¶ 9; Ohio Compl. ¶ 9.)  Plaintiffs
21   alleged in their respective complaints that Florida and Ohio law
22   apply, and the parties agree on the motions that under the
23   relevant conflict of law standards, Florida law applies to
24   Paikai's claims and Ohio law applies to Sidner's claims.

25       **1. <u>Unjust Enrichment</u>**

26       The court first considers defendant's challenges to the
27   unjust enrichment claims.  Defendant moves to dismiss plaintiffs'
28   unjust enrichment claims due to the existence of an express

                                  8

contract governing the subject matter of the dispute.  (Fla. MTD at 4-5; Ohio MTD at 5.)

As an equitable remedy, unjust enrichment is not available where there is an adequate remedy at law.  <u>Gary v. D. Agustini & Asociados, S.A.</u>, 865 F. Supp. 818, 827 (S.D. Fla. 1994) (citing <u>Bowleg v. Bowe</u>, 502 So.2d 71, 72 (Fla. 3d DCA 1987).  Although plaintiffs may not *recover* under a theory of unjust enrichment where there is an adequate remedy at law, Florida and Ohio law clearly allow plaintiff to *plead* breach of contract and unjust enrichment in the alternative.[4]  <u>See, e.g.</u>, <u>Donnelly v. Circuit City Stores, Inc.</u>, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007) ("[I]t is well-settled in this Circuit that breach of contract and unjust enrichment may be pled in the alternative."); <u>Thunderwave v. Carnival Corp.</u>, 954 F. Supp. 1562, 1565-66 (S.D. Fla. 1997) ("Under Florida law, a party may simultaneously allege the existence of an oral contract and seek equitable relief under the theory of unjust enrichment."); <u>Nessle v. Whirlpool Corp.</u>, 2008 WL 2967703, at *6 (N.D. Ohio July 25, 2008) (allowing alternative pleading under Ohio law).

The issue here, however, is whether plaintiffs may plead such alternative theories where there is no question as to the existence of a valid contract governing the matter.  Those courts allowing alternative pleading do so only "in the face of uncertainty as to the existence of a contract or, perhaps, uncertainty as to whether the particular issue at hand falls within the ambit of a contract that otherwise exists between the

---

[4]  This is consistent with Rule 8(d), which allows alternate and inconsistent claims in pleadings.

1  parties." <u>Donnelly</u>, 2007 WL 896337, at *3; <u>see also Detrick v.</u>

2  <u>84 Lumber Company</u>, 2007 WL 1467070 (N.D. Ohio May 10, 2007)

3  (allowing alternative pleading where the existence and reach of

4  the contract was in question).  <u>Thunderwave</u>--a case upon which

5  Florida plaintiff relies--allowed pleading in the alternative

6  "*because* Defendant denie[d] the existence of an express contract

7  . . . ."  <u>Thunderwave</u>, 954 F. Supp. at 1566 (emphasis added).

8        In this case, however, plaintiffs do not allege facts in

9  their complaints contesting the validity of their contracts with

10 defendant, nor do they allege that their contracts do not govern

11 the subject matter of these disputes, i.e., the vehicles'

12 suspension system, alignment settings, and tires.  Instead, in

13 opposing the instant motions, plaintiffs state that "the entire

14 relationship of the parties did not stem from [the] contractual

15 agreement[s]," and thus, their "unjust enrichment claim[s] [are]

16 much broader than the[ir] breach of warranty claim[s]."  (Fla.

17 Pl.'s Opp'n., filed Oct. 22, 2008 ("Fla. Opp'n"), at 20; Ohio

18 Pl.'s Opp.'n, filed Nov. 17, 2008 ("Ohio Opp'n"), at 6)

19 ("Defendant's wrongful conduct extends far beyond the terms of

20 any contract between the parties.").)  Plaintiffs essentially

21 argue that the unjust enrichment claim should stand because some

22 of plaintiff's allegations of wrongdoing do not stem from the

23 warranty agreement itself.  However, to the extent plaintiffs do

24 not allege an inadequate remedy at law--an essential element of a

25 claim for unjust enrichment--these claims cannot stand. See <u>Gary</u>,

26 865 F. Supp. at 827.

27       In their complaints, plaintiffs allege their unjust

28 enrichment claims are asserted "to the extent that there is any

determination that Plaintiff does not have *standing* to assert any contractual claims asserted against Defendant on the alleged basis of absence of contractual privity or otherwise." (Fla. Compl. ¶ 81; Ohio Compl. ¶ 93.) (emphasis added.)  However, one may lack standing to assert a contractual claim despite the existence of a valid contract governing the dispute, thus precluding unjust enrichment as a viable, alternative remedy under the case law set forth above.  Accordingly, this allegation is insufficient to adequately state an unjust enrichment claim under the controlling law.

The court nonetheless recognizes that plaintiffs *may* be able to cure the above defects by amending the claims.  Specifically, plaintiffs may allege claims of unjust enrichment, in the alternative, *to the extent that* the contracts do not govern the subject matter of the dispute.  Defendant's motions to dismiss the unjust enrichment claims are thus GRANTED with leave to amend.[5]

In its motion to dismiss the Ohio claim, defendant makes the additional argument that Sidner failed to allege that he conferred a *direct* benefit on defendant as mandated by Ohio law. (Ohio MTD at 7.)  To establish a claim for unjust enrichment under Ohio law, plaintiff must demonstrate "(1) a benefit

---

[5]     Plaintiffs request leave to amend in the event the court finds any of the causes of action deficient.  Rule 15(a) states that "[t]he court should freely give leave when justice so requires."  "Leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay," none of which are present in this case.  <u>Martinez v. Newport Beach</u>, 125 F.3d 777, 785 (9th Cir. 1997).  Accordingly, the court grants leave to amend in the respects discussed herein.

conferred by a plaintiff upon a defendant; (2) knowledge by the
defendant of the benefit; and (3) retention of the benefit by the
defendant under circumstances where it would be unjust to do so
without payment ('unjust enrichment')." <u>Hambleton v. R.G. Barry
Corp.</u>, 465 N.E.2d 1298, 1302 (Ohio 1984) (internal citations
omitted).  The first element merely requires a "tie of causation
between the plaintiff's loss and the defendant's benefit."
<u>Laurent v. Flood Data Services, Inc.</u>, 766 N.E.2d 221, 226 (Ohio
App. 9 Dist. 2001).  The court disagrees with defendant's
contention that because plaintiff alleged that it bought the car
"indirectly" through a dealer, plaintiff has not pled that GM
received a benefit.  The case upon which defendant relies,
<u>Johnson v. Microsoft Corp.</u>, 834 N.E.2d 791 (Ohio 2005), merely
states that "an indirect purchaser cannot assert a common-law
claim for restitution and unjust enrichment against a defendant
*without establishing that a benefit had been conferred upon that
defendant by the purchaser.*"  <u>Id.</u> at 799 (emphasis added).  Here,
Ohio plaintiff's complaint clearly alleges such a benefit.  (<u>See</u>
Ohio Compl. ¶¶ 14-33, 94-95.)[6]

---

[6]     Specifically, Ohio plaintiff's complaint alleges the
following: "Despite the[ir] obligations, GM denied warranty
coverage to Plaintiff and Class members" (Ohio Compl. ¶ 21);
"Plaintiff and Class members would not have purchased, or would
have paid substantially less for, their Vehicles had they been
informed that the suspension system and alignment setting (and
specifically the camber settings), was defective and that the
defect in the suspension system and alignment setting (and
specifically the camber settings) would cause premature and
uneven wear of the Vehicle's tires" (<u>Id.</u> ¶ 23); "Having presented
the Vehicle for warranty coverage, and having wrongly been denied
such coverage by GM, Plaintiff took his Vehicle to a Firestone
store . . . . [and] was required to pay Firestone $304 for a
replacement tire" (<u>Id.</u> ¶ 33); "Plaintiff and the Ohio Sub-Class
conferred a benefit on GM, of which benefit GM had knowledge. By
its wrongful acts and omissions described herein, including

1    Furthermore, <u>Johnson</u> is factually distinguishable from this

2    case. In <u>Johnson</u>, plaintiff bought a *Gateway* computer from a

3    *Gateway* retailer preinstalled with defendant *Microsoft*'s

4    operating system.  <u>Johnson</u>, 834 N.E.2d at 793.  Here, plaintiff

5    alleges that he bought a *GM* car from an authorized *GM* dealer

6    (Ohio Compl. ¶ 27.)  For these reasons, defendant's motion to

7    dismiss Ohio plaintiff's unjust enrichment claim on this

8    alternative basis is DENIED.

9         **2. <u>Ohio CSPA and Florida DUTPA Violations</u>**

10    Defendant moves to dismiss Ohio plaintiff's OCSPA claim and

11    Florida plaintiff's FDUTPA claim on the same bases; specifically,

12    defendant contends that both plaintiffs: (1) fail to plead

13    affirmative misrepresentations by defendant and (2) fail to meet

14    the heightened pleading requirements of FRCP 9(b).  (Ohio MTD at

15    8-9; Fla. MTD at 6-8.)

16    The Ohio CSPA provides, "no supplier shall commit an unfair

17    or deceptive act or practice in connection with a consumer

18    transaction."  Ohio Rev. Code Ann. Sec. 1345.02(A).  Similarly,

19    Florida's FDUTPA prohibits "[u]nfair or deceptive acts or

20    practices in the conduct of any trade or commerce . . . ."  Fla.

21    Stat. S. 501.204(1).  Despite defendant's contentions to the

22    contrary, this court is not convinced that an omission alone is

23    insufficient to state a claim under either the OCSPA or the

24    FDUTPA.  Though the statutes themselves are ambiguous as to

25

26    selling the Vehicles, GM was unjustly enriched at the expense of
      Plaintiff and the Ohio Sub-Class" (<u>Id.</u> ¶ 94); "It would be
27    inequitable for GM to retain the profits, benefits, and other
      compensation obtained from its wrongful conduct as described
28    herein in connection with selling the vehicles" (<u>Id.</u> ¶ 95).

whether an omission constitutes an unfair or deceptive
"practice," case law supports this view.  In <u>Conrad v. Winnebago</u>,
an Ohio case cited by defendant, the court expressly stated that
an OCSPA claim is actionable where the plaintiff establishes that
"'a material misrepresentation, deceptive act *or omission*'
impacted his decision to purchase the item at issue." <u>Conrad v.</u>
<u>Winnebago Industries, Inc.</u>, 2008 WL 1696950, at *5 (S.D. Ohio
April 9, 2008) (emphasis added) (citing <u>Mathias v. Am. Online,</u>
<u>Inc.</u>, 2002 WL 377159, at *5 (Ohio App. 8 Dist. Feb. 28, 2002));
<u>see also</u> <u>Fisher v. Rose Chevrolet, Inc.</u>, 612 N.E.2d 782, 786
(Ohio App. 12 Dist. 1992)(allowing OCSPA claim for dealership's
failure to disclose previous use and ownership of vehicle).  A
Florida Supreme Court opinion likewise supports this view.  <u>See</u>
<u>PNR, Inc. V. Beacon Property Management, Inc.</u>, 842 So.2d 773, 777
(Fla. 2003) (citing another case for the proposition that
"deception occurs if there is a 'representation, *omission*, or
practice that is likely to mislead the consumer . . . .'"
(emphasis added)(citations omitted)).

    Here, plaintiffs allege the following omissions:

    1.    "[GM] concealed material facts regarding the GTO
          alignment problems . . . " (Fla. Compl. ¶ 5; Ohio
          Compl. ¶ 5);

    2.    "Defendant has or should have the capability of
          fixing the suspension system and alignment
          settings  . . . . Instead . . . Defendant has
          chosen to disclaim responsibility . . . " (Fla.
          Compl. ¶ 6; Ohio. Compl. ¶ 6);

    3.    "Throughout the period during which GM offered the
          GTO Vehicles, GM engaged in a uniform marketing
          and sales campaign, in which it consistently
          misrepresented and/or concealed material facts in
          its advertisements, sales, and marketing
          materials, warranties, and through its sales
          representatives and dealers, by concealing from,

failing to disclose and/or misrepresenting to Plaintiffs and Class material information regarding the vehicles . . . " (Fla. Compl. ¶ 22; Ohio. Compl. ¶ 22);

4.   "Defendant has been on notice of the defect in the Vehicles and that it did not comport with the representations made in the advertising, marketing and sale of the Vehicles . . . . However, Defendant concealed this knowledge from Plaintiff and the Class" (Fla. Compl. ¶ 25; Ohio. Compl. ¶ 25);

5.   "GM failed to disclose the defects in the suspension and alignment settings that result in a markedly reduced useful life of the tires" (Fla. Compl. ¶ 28);

6.   "[Plaintiff] was told [GM] had no information on the problem" (Fla. Compl. ¶ 32);

7.   "The GM representative told Plaintiff [to] return to the dealer and failed to disclose the fact that the know[n] defect was responsible for the type of wear described by Plaintiff" (Ohio. Compl. ¶ 32);

8.   "GM warranted all of GTOs against defects in material or workmanship at a time when it knew that these Vehicles suffered from a serious defect and, nevertheless, continued to market the Vehicles . . . " (Fla. Compl. ¶ 67; Ohio. Compl. ¶ 59);

9.   "GM . . . willfully refused to pay for the new tires or alignment as required under the warranty" (Fla. Compl. ¶ 71; Ohio. Compl. ¶ 63).

Under the case law set forth above, these allegations alone are sufficient to state a claim under the Florida DUTPA and the Ohio CSPA.  However, even if such omissions were insufficient to state a claim under these statutes, both Ohio and Florida plaintiffs do in fact allege affirmative misrepresentations, which defendant concedes are actionable under the States' unfair competition laws.  (Fla. MTD at 6-7; Ohio MTD at 7-8.)  For example, Ohio plaintiff claims that defendant "included misleading and deceptive information in the warranty" and "consistently

15

misrepresented and/or concealed material facts in its
advertisements, sales and marketing materials, [and] warranties .
. . .”  (Ohio Compl. at ¶¶ 21-22; Fla. Compl. ¶¶ 21-22.)
Moreover, courts consistently emphasize liberal construction “in
favor of consumers,” especially at the pleading stage.  See e.g.,
Richards v. Beechmont Volvo, 711 N.E.2d 1088, 1090 (Ohio App. 1
Dist. 1998); PNR, Inc. V. Beacon Property Management, Inc., 842
So.2d 773, 776 (Fla. 2003) (“[T]he Florida Legislature intended
to create a simplified statutory cause of action to provide
additional substantive remedies for consumers . . . .”).  Based
on the foregoing, the court concludes that Ohio and Florida
plaintiffs have adequately pled their claims under the OCSPA and
FDUTPA respectively, and defendant’s motions to dismiss on this
basis are DENIED.

As to defendant’s second argument, that plaintiffs failed to
meet the heightened pleading requirements of Rule 9, the court
likewise finds this argument untenable.  Rule 9 requires that
circumstances constituting fraud be stated with particularity.
Fed. R. Civ. P. 9(b).  It is not clear that Rule 9 applies to an
Ohio CSPA or Florida DUTPA claim.  Notably, defendant cites no
authority for the proposition that the Ohio CSPA is subject to
the heightened pleading standards of Rule 9(b), and there is a
split of authority as to whether Rule 9 applies to the Florida
DUTPA.  Compare State of Fla., Office of Atty. Gen., Dept. Of
Legal Affairs v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288,
1310 (S.D. Fla. 2005) (“[Defendant’s] insistence that [plaintiff]
plead its FDUTPA claim “‘with particularity’ is without merit.”)
with Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1322 (M.D.

1  Fla. 2002) (stating that "most courts" require that FDUTPA claims

2  meet heightened pleading standards).  However, even if Rule 9

3  were to apply, the court agrees with plaintiffs that the

4  complaints meet the heightened pleading standard.  Defendant

5  insists that plaintiffs must "plead 'what is false or misleading

6  about a statement, and why it is false.'" (Fla MTD at 8.)

7  (citing In re Glenfed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir.

8  1994)).  Plaintiffs do just that.  (See Fla Compl. ¶¶ 13-40; Ohio

9  Compl. ¶¶ 13-36.) (describing the alignment problems and alleging

10 that defendant knew of the defects, concealed the defects "in its

11 advertisements, sales and marketing materials," warrantied

12 against the defects, and failed to notify consumers or correct

13 the defects as promised under the warranty.)  Plaintiffs also

14 identify the dates of purchase, model purchased, price paid,

15 dates on which defendant was notified of the problems, and repair

16 costs.  (Fla. Compl. ¶¶ 27-37; Ohio Compl. ¶¶ 27-33.)  Most

17 importantly, plaintiffs' complaints, read in full, put defendant

18 on notice of the claims against it such that defendant can

19 adequately "defend against the charge[s]" at hand, which is the

20 very purpose behind Rule 9.  Newrobronner v. Milken, 6 F.3d 666,

21 672 (9th Cir. 1998).  Thus, to the extent Rule 9 applies, it has

22 been satisfied and defendant's motions to dismiss the FDUPTA and

23 OCSPA claims on this basis are DENIED.

24     Defendant also moves to dismiss Ohio plaintiff's *class* OCSPA

25 claim.  To state a claim for a violation of the Ohio CSPA on

26 behalf of a class, plaintiff must allege that defendant had prior

27 notice that its alleged misconduct was "deceptive or

28 unconscionable."  Marrone v. Philip Morris USA, Inc., 850 N.E.2d

31, 34 (Ohio 2006).  To do so, plaintiff must allege either

(1) that the Ohio Attorney General has adopted a rule declaring

the act or practice at issue deceptive or unconscionable or (2)

that an Ohio court decision, made available for public inspection

by the Ohio Attorney General, has held the act or practice at

issue deceptive or unconscionable.  Id.; see also St. Clair v.

Kroger, 581 F. Supp. 2d 896, 901 (N.D. Ohio 2008).  As defendant

contends, "[l]ack of prior notice requires dismissal of class

action allegations."  St. Clair, 581 F. Supp. 2d at 901.

According to the Ohio Supreme Court, a complaint's reference to

Ohio Admin. Code section 109.4-3-10(A) alone is insufficient to

provide the requisite notice.  Marrone, 850 N.E.2d at 36 ("[Ohio

Adm. Code 109.4-3-10] is insufficient to provide prior notice

under R.C. 1345.09(B) because it does not refer to any particular

act or practice.  A general rule is not sufficient to put a

reasonable person on notice of the prohibition against a specific

act or practice.").  Although Ohio plaintiff cites to specific

Ohio court opinions in his opposition, he does not do so in his

complaint.  For these reasons, the court GRANTS the motion to

dismiss the Ohio CSPA class claim with leave to amend.

### 3. Ohio Statute of Limitations

Defendant further contends that the statute of limitations

bars the Ohio plaintiff's Ohio CSPA claim.  Under Ohio law, an

OCSPA claim "may not be brought more than 2 years after the

occurrence of the violation which is the subject of the suit."

Ohio Rev. Code Ann. Sec. 1345.10(C).  Thus, the issue is when the

alleged "violation" occurred.  Although defendant contends that

the statute of limitations begins to run upon purchase of the

1  vehicle, (Ohio Defs.' Reply at 4), the date of the purchase is

2  not necessarily the "violation" that triggers the statute of

3  limitations.  For example, defendant acknowledges that the

4  "failure to honor a warranty can be a violation of the OCSPA,"

5  and that where a consumer brings such an action, at least one

6  court has held that the statute of limitations begins to run upon

7  the expiration of the warranty.  (Ohio MTD at 10); <u>Temple v.</u>

8  <u>Fleetwood Enterprises, Inc.</u>, 133 Fed. Appx. 254, 266-67 (6th Cir.

9  2005).[7]  Other courts have held that the statute of limitations

10 begins to run upon defendant's failure to fulfil its obligations

11 under the warranty. <u>See e.g.</u>, <u>Bales v. Isaac</u>, 2004 WL 1949419, at

12 *3 (Ohio App. 2 Dist. 2004) (noting for purposes of the statute

13 of limitations that the alleged "violation" occurred upon

14 defendant's failure to repair the defects).

15     Defendant argues that the complaint does not allege a

16 warranty-related violation of the Ohio CSPA.  (Ohio Reply at 5.)

17 Giving plaintiff the benefit of every reasonable inference that

18 can be drawn from the allegations of the complaint (<u>Retail Clerks</u>

19 <u>Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963)), the

20 court finds that plaintiff has indeed pled that defendant failed

21

22     [7]    To adopt defendant's rule would be to ignore the <u>Temple</u>
23 holding.  Defendant contends that where the alleged misconduct is
   connected to the purchase, the date of purchase predominates. But
24 the alleged misconduct in a warranty-related Ohio CSPA claim must
   necessarily be connected with the purchase of the vehicle, as
25 shown by the requirement that the plaintiff plead that he
   received and relied on the warranty before purchasing the
26 vehicle.  <u>See</u> <u>Temple</u>, 133 Fed. Appx. at 267; <u>Conrad</u>, 2008 WL
   1696950, at *5; <u>Richards</u>, 711 N.E.2d at 1090.  Despite the fact
27 that the misconduct must be connected to the purchase in a
   warranty-related Ohio CSPA claim, <u>Temple</u> held that the statute of
28 limitations begins to run upon the termination of the warranty,
   not the purchase of the vehicle.

19

to honor the warranty in violation of the Ohio CSPA. (See Ohio
Compl. at ¶¶ 20-21, 31.) (stating that defendant "failed to
satisfy the[] obligations" of the warranty, included "misleading
and deceptive information in the warranty information provided to
plaintiff" and "denied warranty coverage" to plaintiff).   Thus,
to the extent the Ohio CSPA action is based on a violation of the
warranty, the statute of limitations does not begin to run until
either: (1) the expiration of the warranty, or (2) defendant's
alleged failure to repair under the warranty.   Applying either
standard, plaintiff's Ohio CSPA claim is not time-barred.   The
two-year warranty does not expire until April 4, 2009, and
plaintiff alleges that he was denied warranty coverage as late as
January 2008 (Ohio Resp. at 31).

       To the extent plaintiff alleges that he relied on
defendant's omissions and affirmative misrepresentations *beyond
the warranty* in purchasing the vehicle, defendants are correct
that his claim cannot stand.   However, all of plaintiffs'
allegations in this case are inextricably intertwined with the
alleged omissions and misrepresentations in the warranty itself.
For example, plaintiff specifically alleges: "GM also included
misleading and deceptive information in the warranty information
provided to Plaintiff and Class members, by its (false) promise
that the factory alignment was sufficient for the vehicle" (Ohio
Compl. ¶ 21), and that plaintiff would not have purchased the
vehicle, or would have paid significantly less, had he known of
the defects. (Id. ¶ 23.)   Plaintiff additionally pleads that
"[i]n light of Defendant's knowledge regarding the defect and
problems detailed above, including the reduced expected life of

the tires, the provision of a limited warranty with respect to
the Vehicles under all of these circumstances, constitutes an
unlawful, unfair and fraudulent business practice, and, under all
of the circumstances, the limited warranties accompanying the
Vehicles are unconscionable." (<u>Id.</u> ¶ 26.)   In other words,
plaintiff alleges that, had it not been for the alleged unlawful,
unfair and fraudulent business practices, *including* the alleged
omissions and affirmative misrepresentations in the warranty,
plaintiff would not have bought the vehicle or would have paid
significantly less for the vehicle.   Furthermore, it can be
inferred from the allegations in the complaint that had defendant
remedied the alleged defects within the warranty period, no claim
would have been brought.   Thus, considering "every reasonable
inference" that can be drawn from the allegations in the
complaint, the warranty, not the purchase date, determines the
date upon which the statute of limitations begins to run in this
case.

     For these reasons, defendant's motion to dismiss the Ohio
CSPA claim on the basis of the statute of limitations is DENIED.

**4. <u>Class Claims</u>**

     Defendant next moves to dismiss Ohio plaintiff's class
breach of warranty and MMWA claims and Florida plaintiff's class
breach of warranty and FDUTPA claims.

**a. Ohio Class Claims**

     The crux of defendant's argument regarding the Ohio claims
is that the class claims are "unsuitable for class
certification." (Ohio MTD at 16.)   To support the proposition
that "class allegations can, in some cases, be disposed of by a

21

motion to dismiss," defendant cites various cases which denied
*class certification* under Rule 23.  See, e.g., Stewart v. Winter,
669 F.2d 328, 331 (5th Cir. 1982); Cohen v. Implant Innovations,
Inc., 2008 WL 3927223 (S.D. Fla. 2008); In re General Motors
Corp. Dex-Cool Products Liability Litigation, 241 F.R.D. 305, 315
(S.D. Ill. 2007).  As these cases deal with class certification
under Rule 23, and not motions to dismiss under Rule 12(b)(6),
they are inapposite.  The one case defendant cites in which the
court dismissed the class claim at the *pleading* stage is
distinguishable from the case at hand.  In Stipelcovich v.
Directv, Inc., 129 F. Supp. 2d 989 (E.D. Texas 2001), the
plaintiff brought a class action on behalf of satellite dish
buyers for, among other things, state law claims for negligent
misrepresentation, gross negligence, and common law fraud.  The
Texas district court dismissed the state-based class claims
because, even if discovery were allowed, applying the law of
fifty-one jurisdictions would present "massive choice of law
problems" and would make managing the litigation impracticable.
Id. at 994-95.  Here, on the other hand, plaintiff alleges a
breach of warranty claim under *federal* law on behalf of a 48-
state class, and an Ohio CSPA claim on behalf of an Ohio sub-
class.  The claims allege that all class members purchased the
same type of car under identical warranties.  (Ohio Compl. at ¶
20.)  This is hardly a case that raises the same complex state-
law issues apparent in Stipelcovich, where "variations in state
law [could] swamp any common issues."  Stipelcovich, 129 F. Supp.
2d at 995.

22

1    Furthermore, defendant's reliance on In re General Motors,
2    241 F.R.D. 305 (S.D. Ill. 2007), is unpersuasive.  The key legal
3    issue in that case was whether the manufacturer's owner's manual
4    constituted an express warranty.  Applying Illinois choice of law
5    principles, the Illinois district court held that the state law
6    of each class member governed this determination under the MMWA,
7    thus making the case "unwieldy" and unmanageable.  Id. at 324.
8    The court also lamented the "extremely large number" of vehicles
9    and models involved in the case.  Id.  Unlike here, where the
10   allegations implicate only one GM model, the GTO, from three
11   years, 2004 to 2006, In re General Motors involved over
12   thirty-one GMC models with four different engine types over ten
13   model years.  Id.  Most significantly, the sole issue in In re
14   General Motors was whether the class should be certified, not
15   whether the class claim should be dismissed under Rule 12(b)(6).
16   Defendant's arguments are more appropriately addressed at the
17   class certification stage.

18            **b. Florida Class Claims**

19   Defendant's arguments as to the Florida class claims are
20   similarly unavailing.  The two cases upon which defendant relies
21   in its moving papers address motions for class certification, and
22   are thus, unpersuasive.  Cohen v. Implant Innovations, Inc., 2008
23   WL 392722, at *31 (S.D. Fla. 2008) (denying class certification)
24   Kia Motors America Corp. V. Butler, 985 So.2d 1133, 1141 (Fla.
25   App. 2008) (reversing an order certifying a class).  Here,
26   Florida plaintiff has yet to move for class certification.  In
27   its reply, defendant does provide authority for the proposition
28   that class claims can be dismissed at the pleading stage.  (Fla.

                              23

1   Reply at 10.)  However, the cases upon which defendant relies

2   simply require that the complaint allege facts sufficient to show

3   that there is a "reasonable possibility" of an ascertainable

4   class.  See, e.g., John v. National Security Fire & Cas. Co., 501

5   F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent

6   from the pleadings that there is no ascertainable class, a

7   district court may dismiss the class allegations on the

8   pleadings."); Alvarez v. May Department Stores Co., 143 Cal. App.

9   4th 1223, 1231-32 (2006) ("An evidentiary hearing on the

10  appropriateness of class litigation is not necessary unless there

11  is a "reasonable possibility" that the plaintiff can establish a

12  community of interest and ascertainable class."); Rose v.

13  Medtronics, Inc., 107 Cal. App. 3d 150, 154 (1980)

14  ("Procedurally, where there is a 'reasonable possibility' that

15  the plaintiff in a class action can establish a community of

16  interest among potential claimants, the preferred course is to

17  defer decision on the propriety of the class action until an

18  evidentiary hearing has been held on the appropriateness of class

19  litigation.").

20      Florida plaintiff has met this standard.[8]  A class is

21  sufficiently defined if it is "administratively feasible for the

22  court to determine whether a particular individual is a member."

23  O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal.

24  1998); see also Buford v. H&R Block, 168 F.R.D. 340, 347 (S.D.

25  Ga. 1996) ("[T]he description of the class must be sufficiently

26  definite to enable the court to determine if a particular

27  _____

28       [8]   The court notes that for the same reasons, Ohio
    plaintiff has also met this standard.

1 individual is a member of the proposed class") (quoting <u>Pottinger</u>

2 <u>v. Miami</u>, 720 F. Supp. 955, 957 (S.D. Fla. 1989)).

3        Paikai's class definition specifically identifies the make,

4 model, and years of specific owners and lessees, while excluding

5 certain individuals.  (Fla. Compl. ¶ 41; Ohio. Compl. ¶ 37.)  He

6 alleges that defendant either maintains or has access to records

7 that can identify each class member.  (Fla. Compl. ¶ 48; Ohio.

8 Compl. ¶ 44.)  Furthermore, sales records, public filings, and

9 other means are potentially available to identify a finite number

10 of class members.  Taken in the light most favorable to

11 plaintiff, the class is sufficiently ascertainable from the

12 pleaded facts.

13                **c. Both Action's Class Claims**

14        Defendant further contends, more specifically, that the

15 class allegations for the breach of express warranty claims

16 should be dismissed because individual issues will predominate

17 over common issues of fact.  (Fla. MTD at 8-10; Ohio MTD at 14-

18 16)  Defendant asserts that the difficulty of demonstrating that

19 each class member has met the specific requirements of the

20 warranty must be dealt with on an individual basis.  (Fla. MTD at

21 8-10; Ohio MTD at 14-16.)  Defendant's arguments are more

22 appropriately raised at the class certification stage.  At this

23 juncture, it is sufficient that plaintiffs plead that GM knew

24 about the defects prior to selling the subject vehicles,

25 concealed the defects from the public, received numerous

26 complaints and has refused to correct the defects.  (Fla. Compl.

27 ¶¶ 18-26, 38-40; Ohio Compl. ¶¶ 18-26, 34-36.)

28        One Ninth Circuit case has specifically held that

                                   25

1  "compliance with Rule 23 is not to be tested by a motion to

2  dismiss for failure to state a claim . . . ." <u>Gillibeau v. City</u>

3  <u>of Richmond</u>, 417 F.2d 426, 432 (9th Cir. 1969); <u>see also</u> <u>In re</u>

4  <u>Wal-Mart Stores, Inc.</u>, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)

5  (stating that courts have made it clear that "dismissal of class

6  allegations at the pleading stage should be done rarely and that

7  the better course is to deny such a motion because 'the shape and

8  form of a class action evolves only through the process of

9  discovery'") (citations omitted).  Defendant argues in its reply

10 that the court should not defer addressing the "inherent problems

11 with the proposed class" to a later date.  (Ohio Def. Reply at

12 11.)  Yet this is the very purpose of allowing separate class

13 certification proceedings.  "Rule 23(c)(1) provides that, as soon

14 as practicable after the commencement of an action brought as a

15 class action, 'the court shall determine by order whether it is

16 to be so maintained.'"  <u>Id.</u>  For these reasons, the court DENIES

17 defendant's motions to dismiss the Ohio and Florida plaintiffs'

18 class claims.

19                            **CONCLUSION**

20      Based on the foregoing analysis, the court makes the

21 following orders:

22      Defendant's motions to dismiss are:

23           (1)  GRANTED in part and DENIED in part as to the

24                unjust enrichment claims;

25           (2)  DENIED as to the sufficiency of plaintiffs'

26                individual Ohio CSPA and Florida DUTPA claims, but

27                GRANTED as to the sufficiency of the Ohio CSPA

28                class claim;

                              26

(3)   DENIED as to the statute of limitations for the
       Ohio CSPA claim; and

(4)   DENIED as to the Ohio class breach of warranty and
       MMWA claims, and DENIED as to the Florida class
       breach of warranty and FDUTPA claims.

Plaintiffs are granted leave to amend with respect to their unjust enrichment claims.  Ohio plaintiff is granted leave to amend with respect to his Ohio CSPA class claim.  Plaintiffs shall have 20 days from the date of this order to file their amended complaints. Defendant shall have 20 days after service thereof to file a response thereto.

IT IS SO ORDERED.

DATED: February 4, 2009

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE